SO ORDERED: February 29, 2008.

_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GREGORY ANTONIO SPRINGIRTH ) | CASE NO. 07-1437-AJM-7 |
| ) | |
| Debtor ) | |

### ORDER ON UST'S MOTION TO DISMISS
### PURSUANT TO 11 U.S.C.§707(b)(2) and (b)(3)

This matter came before the Court on February 4, 2008 upon the Motion of the United States Trustee to dismiss this case under either 11 U.S.C. §707(b)(2) or §707(b)(3) (the "UST's Motion"). For the reasons stated below, the Court grants the motion to the extent it requests dismissal under 11 U.S.C. §707(b)(3). However, the Court will withhold entering its order of dismissal for thirty days to give the debtor an opportunity to convert the case to one under chapter 13.

### *Background*

The Debtor is married but filed this chapter 7 case singly, and his non filing

spouse, Susan ("Susan") earns significantly more income. Susan's monthly income is $10,331.70 and the Debtor's is $1443.16. With a combined monthly income of $11,754.86, and a household of 3, the Debtor's household income is well over twice the median income for an Indiana debtor. Since the Debtor is an "above median income" debtor, he was required to complete the means test form. After claiming the deductions to which he believed he was entitled, the Debtor's completed means test form provides for a negative monthly disposable income of $42.31, and thus, the presumption of abuse did not arise. [1]

The Debtor has slightly more than $85,000 in general unsecured debt of which $65,000 is credit card debt. All of the Debtor's credit cards were in his name only and the majority of the credit card debt was for personal items.

### *§707(b)(2) - Means Test Form*

The UST takes issue with several deductions claimed by the Debtor, which, if not allowed, would cause the presumption to arise. The UST challenged primarily the following deductions: (1) the $7481.17 marital adjustment on line 17; (2) the $147 housing and utilities adjustment on line 21; (3) the $358 vehicle ownership deduction on line 22; and (4) the $850 childcare deduction on line 30. The Court's decision to dismiss the case is premised on §707(b)(3) and not the means test form under §707(b)(2) and therefore it makes no findings as to whether the Debtor's deductions are

---

[1] The Debtor filed a total of three (3) means test forms. The first was filed with the petition, on February 28, 2007where it was computed that the Debtor's monthly disposable income was negative $2864.54; the amended form was filed on August 23, 2007 where the monthly disposable income was computed at negative $833.04; the second amended form was filed on November 27, 2007 wherein the monthly disposable income was computed to be negative $42.31. It is this second amended means test form filed on November 27, 2007 that is the operable form here and upon which the UST's objections as discussed in this order are based.

appropriate. [2]

### §707(b)(3)

Assuming arguendo that the Debtor passes the means test, the UST in the alternative moves to dismiss the case under §707(b)(3). That section provides that, as to debtors who "pass" the means test or rebut the statutory presumption of abuse, the court nonetheless can find that abuse exists if the debtor filed the petition in bad faith or if the "totality of the circumstances" of the debtor's financial situation demonstrates abuse. The UST here acknowledged at the outset of the February 4th hearing that "it would be unfair to raise bad faith" and has not argued that the Debtor filed the petition in bad faith. Thus, the Court will proceed on "totality of the circumstances" prong of §707(b)(3).

In contrast to the mechanical application of the means test under §707(b)(2) which uses certain fixed national and local standard amounts irrespective of the debtor's actual needs, a judge may exercise discretion and consider the debtor's actual financial situation under §707(b)(3). "Ultimately, even when the means test does not presume abuse, genuinely wealthy debtors may be denied chapter 7 relief" under

---

[2] A couple of comments with respect to the deductions claimed on the means test are in order. On line 22 of the means test form, the Debtor claimed a $358 vehicle operation/ public transportation expense deduction for 2 vehicles, yet only one vehicle is listed on Schedule B. The Debtor testified in the hearing held on February 4, 2008 that one of the vehicles was titled in the name of his business and the other is in Susan's name. The line 22 operating expense deductions are based on "Local Standards" which bases the allowable deduction on the number of vehicles *the Debtor owns* and the region in which he lives. *In re Zaporski*, 366 B.R. 758, 769 (Bankr. E. D. Mich, 2007); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006). Furthermore, the Debtor claimed a childcare deduction of $850.00 on line 30 even though a deduction of only $660 was claimed on the original means test form. The UST objected on the basis that the Debtor failed to provide sufficient documentation justifying the increase and the Debtor presented no further evidence of this issue at the February 4th hearing. If just these two deductions were disallowed and the appropriate adjustments were made, the Debtor has monthly disposable income, when multiplied by 60, that exceeds $10,000, and therefore the presumption of abuse arises.

§707(b)(3).  Eugene R. Wedoff, Judicial Discretion to Find Abuse Under §707(b)(3), 25 Am. Bankr. Inst. J. 1, 49 (April 2006).  See also, *Zaporski*, 366 B.R. at 768 ("Just because there is no statutory presumption of abuse does not somehow create a safe harbor for a debtor").

The "totality of circumstances" test under BAPCPA's §707(b)(3) [3] has its origin in pre-BAPCPA law.  Pre-BAPCPA §707(b) did not contain any reference to "totality of the circumstances" regarding the debtor's financial condition or otherwise.  However, it did provide that a case could be dismissed where the granting of relief would be a *substantial* abuse of the provisions of chapter 7, but there was a presumption in the debtor's favor of granting the chapter 7 relief.  "Substantial abuse" was not defined under §707(b) and there developed under case law three distinct tests for determining whether "substantial abuse" existed.  The "per se" rule of the Eighth and Ninth Circuits held that the debtor's ability to pay his debts through a chapter 13 plan alone warranted dismissal.  The "totality of the circumstances" test of the Fourth Circuit required more than just a showing of the debtor's ability to pay and fund a chapter 13 plan, although it could be the main factor to be considered. [4]  A hybrid approach taken by the Sixth Circuit incorporated both the "per se" rule and the "totality of the circumstances" test and permitted dismissal based on the ability to pay alone, but allowed the debtor to demonstrate mitigating circumstances.  *In re Nockerts*, 357 B.R. 497, 505 (Bankr. E. D.

---

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), effective October 17, 2005, substantially amended then-existing §707(b) and added §707(b)(2) and (b)(3).

[4] As a result of the revisions made by BAPCPA, the "per se" rule seems to have been codified as the means test under §707(b)(2) and the "totality of the circumstances" test seems to have been codified in §707(b)(3).

4

Wis. 2006). [5]

BAPCPA substantially changed §707(b) in that it removed the presumption in favor of the debtor, and replaced "substantial abuse" with "abuse". It is generally thought that this change from "substantial abuse" to mere "abuse" is "a distinction without a difference" and therefore, pre BAPCPA §707(b) cases are instructive in determining whether abuse exists under §707(b)(3). *In re Travis*, 353 B.R. 520 (Bankr. E. D. Mich. 2006).

Pre-BAPCPA cases agreed that, at a minimum, the non filing spouse's income was to be considered in determining whether a debtor had the ability to pay and fund a chapter 13 plan. *In re Strong,* 84 B.R. 541, 543 (Bankr. N.D. Ind. 1988); *In re Staub,* 256 B.R. 567, 570 (Bankr. M. D. Pa. 2000). One BAPCPA case under §707(b)(3) has determined that the non filing spouse's income should be considered only if that income "is substantial enough to significantly raise the debtor's standard of living and generate total household income in excess of reasonable costs of food, clothing, shelter and other necessities". *Travis*, 353 B.R. at 530.

Here, Susan contributes 80% ($6010.49) of the total net monthly income listed on Schedule I ($7453.65) and her net monthly income is sufficiently in excess of the *reasonable costs of the household necessities.* The expenses on lines 1 through 9 of amended Schedule J (mortgage, utilities, home maintenance, food, clothing, laundry, medical and dental expenses, and transportation) are the *household* expenses, not just

---

[5] Judge Coachys of this District adopted the Sixth Circuit's hybrid approach in determining "substantial abuse" under §707(b). *In re Burger*, 280 B.R. 444, 447 (Bankr. S. D. Ind. 2002)

the Debtor's share of those household expenses and roughly add up to $3060.00 which is little more than half of Susan's net monthly income.  This still leaves room for payment of the very generous amounts listed as Susan's "other expenditures", among which is a $350 transportation expense for which Susan receives reimbursement.  Even taking into account these large and seemingly unreasonably high expenses, there remains roughly $470.00 of disposable income each month, as reflected on the Debtor's amended Schedule J, even before inclusion of Susan's $350 transportation reimbursement.  The Court is convinced that Susan's income "is substantial enough to significantly raise the debtor's standard of living and generate total household income in excess of reasonable costs of food, clothing, shelter and other necessities".  Susan's income easily covers and exceeds the costs of household necessities.

      Furthermore, the majority of the credit card debt the Debtor seeks to discharge is for the Debtor's personal items, such as gas, clothing, and on occasion, household necessities such as groceries and home maintenance supplies.  Obviously these household necessities contributed to and benefitted the household of which Susan is a member.  However, even the charges for the Debtor's personal items benefitted the household because, had the Debtor not charged these items, the majority of these charges would have been paid from household income, and most of this income would have come from Susan.   The fact that they were not so paid enabled Susan to free up more of her income to devote to other household expenses and to her personal expenses, such as the $1200 she deposits in her savings account each month.  Therefore, Susan and the household benefitted from the charges being paid by the credit card companies.   Thus, the Court finds that the Debtor has the ability to pay

under the "totality of the circumstances" test. [6]

Some courts have held that more than just an ability to fund a chapter 13 plan is required under the "totality of the circumstances" test where the debtor is an above median income debtor who has already passed the means test (e.g. "ability to pay") under §707(b)(2). *Nockerts*, 357 B.R. at 507-08. The additional factors to be considered as the "totality of the circumstances" are factors set forth in the *Green* case of the Fourth Circuit [7] and include a determination of whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment. [8] Here, the Debtor testified he was an accountant earning $70,000 a year before he voluntarily switched careers and went into the landscaping business. The bankruptcy was filed not because of illness, disability or unemployment but because of the Debtor's voluntary career change which unfortunately resulted in significantly less income than his previous career. This, coupled with the Debtor's ability to fund a chapter 13 plan, prompts the Court to dismiss this case under §707(b)(3).

This case will be dismissed within thirty (30) days from the date of this order unless the Debtor converts this case to a chapter 13 case within that time.

---

[6] At the February 4th hearing, Susan argued that it is unfair to consider her income since she is not legally obligated to pay the Debtor's credit card debt as it was incurred in his name only. The Court, by its ruling today, does not ask Susan to pay the Debtor's credit card debt. It simply finds that the Debtor himself "has available discretionary income by virtue of the fact that he and the non debtor spouse share a joint household". *In re Berndt*, 127 B.R. 222, 225 (Bankr. D. N. D. 1991).

[7] *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991).

[8] The other factors to be considered are whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay, whether the debtor's proposed family budget is excessive or unreasonable, whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition and whether the petition was filed in good faith. *Green*, 934 F.2d at 572.

7

# # #

Erika Kornowa, Attorney for the Debtor
Mark Drummond, Attorney for the United States Trustee
Case Trustee